

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

| | | |
|---|---|---|
| William David Jones | ) | Case Number: 3:21cv00288 |
| Petitioner | ) | |
| Pro Se | ) | |
| | ) | |
| v. | ) | Complaint and request for jury |
| | ) | trial |
| Department of Defense | ) | |
| Defense Logistics Agency | ) | |
| Defense Supply Center, Richmond | ) | |
| Defendant | ) | 3 May 2021 |

## COMPLAINT FILED AGAINST AGENCY FOR VIOLATION OF CONSTITUTIONAL DUE PROCESS RIGHTS

## AND

## VIOLATION OF ADMINISTRATIVE PROCEDURES ACT

## Complaint

I, William David Jones, am petitioning this Court for a jury trial against the Defense Logistics Agency regarding violations of my Constitutional Right of Due Process and violations of 5 USC 701 – 706 (the Administrative Procedures Act)

Specifically, I am bringing the following complaints to this court:

## (1)    Unlawful Debarment and Violation of Constitutional Due-Process Rights.

On 29 November 2018, twelve days after I was forced to resign from my position as a Senior Operations Research Analyst, the commander of the Defense Supply Center, Richmond (DSCR), Brigadier General Linda S. Hurry, signed a letter debarring me. At no time while I was employed, nor after I resigned, did I commit any act or crime against any person or government facility that warranted this extremely serious, but expressly capricious act.

The debarment letter I received through the mail on 5 December 2018 was vague, merely stating that the Base Commander (Hurry) debarred me for "having violated a no-contact order and exhibiting threatening and harassing behavior towards a DLA employee." The debarment letter did not include any statute, law, or regulation that I had violated, nor did it reference any specific date, circumstance, incidents, or names.

2

The debarment letter contained no administrative or other legal remedy, other than to contact the DSCR Chief of Security (Mr. Guy Simmons), if I felt it necessary to request any change of status.   The letter addressed that the debarment was enforceable under 18 USC 1382, and warned me not to enter the boundary of the DSCR without permission.

## (2)  Violations of 5 USC 701 – 706 (The Administrative Procedures Act).

Focusing on the debarment letter from BG Hurry, the letter contains no statute, regulation, law, or other procedure with which to reference.  The letter only included 18 USC 1382 as the legal citation in the debarment, but 18 USC 1382 is a warning issued with the debarment.  18 USC 1382 is not the underlying law or legal authority for the debarment.

Debarments, by law, are legal instruments not to be used capriciously, arbitrarily, or discriminately, and they are also not the proper first venue unless the person being debarred has committed a capital offense or other major crime.

Courts face issues regarding debarments; if the individual has committed a crime that warrants the debarment, then commanders are free to exercise their rights to debar that person.  However, installations commanders cannot arbitrarily issue debarments just because they have been granted authority to debar an individual. The courts are often reluctant to overturn debarments because they are generally

3

classed as national security issues. Individuals who have been debarred for arbitrary, capricious, or discriminatory purposes are left to litigate the debarment under 5 USC 701 – 706, which provides individuals with the only known recourse.

My case before this court is to show that the debarment is not commensurate with the law; it is important to note that I never committed (nor was accused of) any crime while assigned to DLA or afterwards. Since I have committed no crime, and certainly no capital or major offense, I contend that BG Linda S. Hurry overstepped her authority and debarred me for no legal reason.

I have made several good-faith attempts to communicate with the DSCR Chief of Security regarding the debarment since December of 2018, including requesting the procedures used, the evidence submitted, and witness statements. I received absolutely nothing until October of 2019, when I received a heavily redacted and virtually useless commander-directed investigation courtesy of a FOIA request I made through DLA's FOIA services in December of 2018 and revised in February of 2019. The document I received through FOIA was followed by a slightly more useful document through the EEO process: a submission from BG Hurry in November of 2019 provided a copy of the threat assessment which was forwarded to her for consideration.

However, the threat assessment teams' evaluation is riddled with factually deficient information as well as outright lies which I have attempted to highlight with the DSCR's Chief of Base Security (Mr. Guy Simmons) as a basis for challenging and terminating the debarment. A witness also came forward to Mr. Simmons and explained that she supplied information that was inaccurate and coerced by other DLA employees.

Upon receiving this document, I requested to meet with and discuss the debarment with the new DSCR commander, BG David Sanford; BG Hurry had since changed command. I submitted rebuttal information and other evidence (including the recanted witness statements) to BG Sanford's office through the DSCR Chief of Security that was never included in the threat assessment team's November 2018 report – information that I should have been allowed to present on my behalf under the Constitutional Right of Due Process. I searched for DLA's and the DSCR's set of published standards outlining debarment procedures, finding nothing. As I discovered in my search, other military and Federal installations have published debarment procedures.

DLA and the DSCR has no publicly accessible set of standards and procedures regarding debarment of civilians.

Strikingly poignant, any citizen with access to the Internet can acquire the specific debarment procedures for such military installations as Marine Corps Base Quantico, Quantico, Virginia; Fort Bragg, North Carolina; and Hill Air Force Base, Utah. Each of these installations' debarment procedures are clear and concise, include the legal authorities, have example forms used to debar military and civilian personnel, include the means for the debarred person to provide a defense, and provide commanders with Staff Judge Advocate legal reviews, including standards regarding the appropriate use and length of time to debar an individual.

Searches for DLA's and DSCR's individual debarment procedures on the internet yield no results. Inquiring about DLA's and DSCR's debarment procedures only provides information regarding DLA's contract business vendors who break Federal Acquisition Rules.

If there are no published procedures, then the question arises: what procedures does DLA and the DSCR use to debar a civilian? It is important to note that DLA, and specifically the DSCR, is a component of a Combat Support Agency, not a military installation. Civilians are not governed by the Uniform Code of Military Justice (UCMJ). Though commanded by an Air Force flag officer at the time, the General Counsel at DSCR could possibly argue that Air Force regulations apply. However, such a statement would be arbitrary, since DoD Civilians are not subject to the rules of the military services or UCMJ except in special circumstances.

6

Additionally, one cannot ignore the fact that at the time I was debarred, I was a private citizen, no longer employed by the Federal government, and did not break any rule that warranted debarment – a statement equally true while I was employed with the Federal Government.

Finally, the debarment does not meet the underlying national security interest principles upon which debarment is founded. As the enforcement legal authority, 18 USC 1382 traces its history to a time when would-be spies and other individuals routinely attempted to infiltrate and undermine the national interests of the United States during the era of the Cold War. The application of 18 USC 1382 has been augmented to debar members of the military who are being (or have been) dishonorably discharged. Neither of these originating reasons applies to me. I have never committed any crime at, near, or on DSCR, never damaged government property, never harmed anyone – military or civilian – on or off the DSCR, nor have I committed any crime off-base by which a military commander would have authority to debar me. Examination of the legal fundamentals behind this debarment, by the very definition of the words, logically leads to the conclusion that the debarment was and is arbitrary and capricious.

The law provides commanders with a wide latitude to debar individuals, but the law also ensures that the debarment be preceded by a crime that warrants such extreme action. Upon examining the debarment procedures of each of the

7

aforementioned installations available on-line, all of which detail crimes worthy of debarring an individual, a comparison of my situation fails to meet the same legal basis.   In fact, comparison reveals that my debarment meets the definition of capricious, arbitrary, and discriminatory.   Permanent debarment at any of the aforementioned installations requires that the person who is facing this harsh action to be more than simply charged with a capital offense or an offense in which incarceration for 10 or more years is the sentence; and *a clear and compelling preponderance of evidence is necessary*.  I have never been charged with any crime, certainly not of the magnitude addressed in the procedures listed in each of those installations, and there is no overwhelming preponderance of evidence against me that remotely suggests or warrants debarment.

BG Hurry, in her late submission to the EEO, stated that she had debarred a total of six persons from the DSCR.  She described the infractions that each of the six committed:  Two were for possession of marijuana on the DSCR; two were for making violent threats against their supervisor and fellow employees involving a weapon, one was for indecent (lewd) acts in public, and me.  The basis for my debarment: "Violating a no-contact order and exhibiting threatening and harassing behavior towards a DLA employee." *No mention of names, dates, or incidents*.  In the previous five debarments, the employee has committed a real crime, traceable to a law or statute that warrants debarment.  To this date, DLA refuses to acknowledge

8

when I allegedly violated a no-contact order, nor whom I allegedly threatened or harassed. None of the accusations contained in the debarment letter rise to the level of permanent debarment. In addition, not one of the persons Hurry debarred from the DSCR was a female. Debarment is not restricted to men only, but I contend that BG Hurry acted in a discriminatory manner based on gender.

If the DSCR commander has the authority to debar a person for violating a no-contact order, then the commander MUST apply the same response for the same infraction, regardless of gender. In March and April of 2017, Natalie Clark Seiling violated a no-contact order from DLA more than 10 times that I reported through my chain of command. Brigadier General Linda S. Hurry was the commander at DLA-Aviation and the DSCR at that time. Natalie Clark Seiling was not debarred from the DSCR. Her punishment for violating the no-contact order: NONE. If a commander is presented with evidence that a no-contact order is sufficient to order a debarment, gender must not be a mitigating circumstance; to include gender in deliberating any punishment is to violate Title VII.

In late December of 2019, I respectfully submitted a letter through Mr. Guy Simmons to BG Sanford requesting a review and lifting of the debarment. Despite my efforts clearly showing that this FOUO//LAW ENFORCEMENT SENSITIVE document harbors witness statements that were absolutely false, BG Sanford refused to consider any evidence and counter-evidence that I provided, and stated in a

response dated late January 2020 that the debarment would remain in effect. This act is discriminatory as well. It fails the rules to test evidence; if evidence can be proven to be false, it must be discredited, along with the witness. And, if the witness knowingly supplies false witness, then that person has committed a crime.

DLA, without preponderance of evidence, maintains a position that I am guilty of some violation that merits the debarment. Certainly, while I was employed at DLA, had I committed any crime, I believe that the DLA Police would have been called immediately, and that the DLA Police would have arrested or charged me at the very worst; on the other hand, at the opposite side of the spectrum, my chain of command would be have been notified and would present some kind of statement of counseling addressing such behavior.

Neither of these theoretical situations occurred. There was no such arrest. There is no such counseling document. My personnel record has no counseling statements of any kind, and certainly no arrest record.

If none of the above is present, how can DLA justify the debarment? There is no legal cause and effect that a reasonable person can trace. For this reason, the debarment is capricious, arbitrary, and discriminatory.

**(3)  Congressional Inquiries and Responses.**

I have submitted three Congressional Inquiries into this and related matters since March of 2019.  Each letter returned to the Honorable Congressman Tim Kaine included highly questionable misinformation, including allegations that I had placed malicious programming onto DLA's information technology platform (which DLA's information technology division, J6, examined thoroughly and concluded was false in its reply to Congressman Tim Kaine dated March or June of 2019), that I had assaulted and harassed DLA employees (an accusation that the US Air Force Office of the Inspector General, Senior Officer Division, examined and reported as baseless in February 2021), and, the latest, that DLA had provided me with copious copies of *all* of the documents surrounding the debarment and other allegations – but then only references the one FOIA request that DLA less-than-honored in October of 2019.

This last response is false; the documents that I received through FOIA contained a written caveat that stated that more than 20 pages of witness statements and other testimony were not included.  If they were not included, then I do not have a "complete copy of the record."  The other responses to Congressional Inquiries to the Office of the Honorable Tim Kaine contain equally incorrect information.

## (4) Refusal to Provide Evidence and Documentation.

DLA refuses to share my personnel file with me, and has stated that I must use the FOIA process to obtain my records. That determination is incorrect; I am not required to request documents from my personnel file through FOIA. In fact, the FOIA process is patently incorrect. Since I am asking for my own personnel file, and I am the requestor, the Privacy Act of 1974 applies. I am required to request a copy through DLA's Human Resources office and that office refuses to send me any documentation.

## Named Persons of Interest in this Complaint.

Within the provisions of the Administrative Procedures Act (namely, 5 USC 702), I am able to name specific persons who have contributed to the Agency's decision-making process to debar me and that caused direct and indirect harm. I name those persons below:

(1)     Natalie Clark Seiling, J343, DSCR, DLA.

(2)     John T. Wait, J67A, DSCR, DLA.

(3)     Jennifer Morasco, J67H, DSCR, DLA.

(4)     Jessica Ramsaran, Combined Arms and Services Command (CASCOM), Fort Lee, Virginia.

(5)     Thomas Meyer, J67A, DSCR, DLA.

12

(6)     Teresa W. Smith, J67, DSCR, DLA.

(7)     Lt. Hanif Granville, DLA Police, DSCR, DLA.

(8)     Guy Simmons, Chief of Base Security, DSCR, DLA.

(9)     Tralana Linder, Chief of EEO, DSCR, DLA.

(10)    BG David Sanford, Commander, DSCR, DLA.

(11)    BG Linda S. Hurry, Director of Logistics, Deputy Chief of Staff for Logistics, Engineering and Force Protection, Headquarters U.S. Air Force, The Pentagon.

## Relief Sought.

At the minimum, I seek to have the debarment against me lifted.

Additionally, and if I am legally entitled, I request the following:

(1)     A return to my former employment with DLA as a GS-1515, with the appropriate advancement in step and grade, plus fully successful annual evaluations.

(2)     Back pay to the date of my forced resignation.

(3)     All accrued annual and medical leave from the date of my resignation.

(4)     Punitive damages brought about by the debarment.  The debarment was unethical, illegal, and humiliating treatment by the Agency which went as far as to

prevent me access to medical facilities. Additionally, DLA's General Counsel made statements to an Administrative MSPB Judge declaring that I was lying about the effects of the debarment at other installations, declared that I had concocted the idea of personnel information verification (PIV) reciprocity, that the debarment was local to the DSCR only, and that scanning my identification card at any other Federal facility would not reveal that I had been debarred at the DSCR. I educated the DLA General Counsel about the Defense Biometric Identification System (DBIDS) and Automated Installation Entry (AIE), the two programs that tie into the database that houses derogatory information and informs security officers manning the gate about such things as debarments. As a result, I am asking for $100,000.

(5)    For parties who have made false statements and who have committed perjury in this sequence of events, including statements used in official investigations, I ask that this court consider the maximum penalty established under US Federal Law for those who are proven to have committed perjury.

**Effects of the Debarment.**

If this court will hear my case, then the statements that I submit with the support of evidence will be substantial. The debarment has made a terrible and daily indictment of my character to the public, and has severely limited my ability to be a contributing person to society. The debarment daily causes me harm, and I receive a daily reminder of its impact as I come to work at Marine Corps Base Quantico

14

(MCBQ).  I have had base security officers at Fort Lee place me in handcuffs, and security officers at Fort Lee and MCBQ have attempted to draw their weapon upon seeing the debarment on their electronic scanning device at the gate courtesy of PIV reciprocity and DBIDS / AIE.

I have been vilified in the public domain by false and libelous accusations made by several current and former DLA employees; such statements include "active shooter threat," "insider threat," and "terrorist" to the point that I have been blacklisted for employment at both Fort Lee and the DSCR.  Over 130 applications that I tendered through USAJobs have resulted in me being turned away, despite my credentials, education, experience, and abilities.

As an example, in March of 2019, DCMA Headquarters at Fort Lee, Virginia, hired me for a GS-1515 position, and then terminated the job offer based upon false information supplied by my former supervisor, John T. Wait, specifically that I wrote and placed malicious code on DLA's information technology systems, a lie that was cleared by DLA's own J6, Information Technology Division.  DLA has displayed rampant discrimination against me and continues to promote lies in response to three Congressional Inquiries I have submitted; the latest reply that I received is dated 23 April 2021.

15

## Conclusion

DLA ordered this debarment for one reason: a woman scorned. DLA entangled itself with this female employee and our relationship based on her word, while ignoring and clearly refusing to consider evidence that I submitted; it is clear to me that DLA exhibited discrimination.

The evidence will show that DLA engaged in dangerous and discriminatory practices, and put the desires of several DLA employees to do harm to me above the law.

I respectfully request that this court allow me the opportunity to plea my case as soon as possible.

This document is respectfully submitted to this court under the penalty of perjury by:

William David Jones
18065 Lunde Lane
Rockville, VA 23146-1731
Work: (703) 784-6685
Cell: (505) 920-5018
wdavidjones101668a@gmail.com
william.jones@usmc.mil

16

## Certificate of Service

I certify that on 3 May 2021, I mailed a complete copy of this document to the following addresses as required:

Defense Logistics Agency
Defense Supply Center, Richmond
Office of the General Counsel
8000 Jefferson Davis Highway
Richmond, VA 23297


Attorney General of the United States
Main Justice Building
10th and Constitution Ave, NW
Washington, DC 20530


United States Attorney for the Eastern District of Virginia
Suntrust Building
919 East Main Street
Suite 1900
Richmond, VA 23219

17